UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVINA GIBSON, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STANFORD HEALTH CARE,<br><br>Defendant. | Case No.  23-cv-02320-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>[Re: ECF 10] |

Plaintiff Davina Gibson ("Gibson") filed this putative class action against Defendant Stanford Health Care ("Stanford") in the Santa Clara County Superior Court, asserting three state law privacy claims on behalf of California residents who have used Stanford's online patient portal. Gibson claims that Stanford's website utilizes certain code provided to it by Facebook – "the Facebook Tracking Pixel" – that transmits patients' personally identifiable information and protected health information to Facebook whenever the patient portal is used, without the patients' consent and in violation of their privacy rights.

Stanford removed the action to federal district court pursuant to 28 U.S.C. § 1442(a)(1), commonly referred to as the federal officer removal statute, which in relevant part provides for the removal of an action brought against a federal officer or "any person acting under that officer" where the action is "for or relating to any act under color of such office."  Gibson moves to remand the action to state court, arguing that § 1442(a)(1) does not apply because Stanford was not "acting under" a federal officer when Stanford violated patients' privacy rights.  Stanford opposes remand.  The Court previously vacated the hearing on the motion. *See* Order, ECF 24.

Gibson's motion to remand is GRANTED as discussed below.

## I. BACKGROUND

Gibson filed this action in the Santa Clara County Superior Court on March 23, 2023, asserting three state law privacy claims against Stanford on behalf of herself and the putative class: (1) violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a); (2) violation of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10; and (3) Invasion of Privacy under California's Constitution. *See* Not. of Removal Ex. A ("Compl."), ECF 1.

Gibson's claims are based on the following allegations: Stanford is a nonprofit entity with its principal place of business in Stanford, California. *See* Compl. ¶ 6. Stanford offers a full range of medical services, including primary and outpatient services, that are utilized by thousands of patients a year. *See id*. Stanford maintains an online patient portal that is accessible through the website stanfordhealthcare.org. *See id.* ¶ 8. Gibson, a California resident, has obtained medical services at Stanford and has used Stanford's online patient portal to book appointments and view the results of medical tests. *See id.* ¶¶ 7-8.

Stanford has integrated a piece of code it obtained from Facebook, referred to as the Facebook Tracking Pixel, into its website stanfordhealthcare.org. *See* Compl. ¶ 28. "When a user accesses a website hosting the Facebook Pixel, Facebook's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Facebook's servers." *Id*. "This second, secret and contemporaneous transmission contains the original GET request sent to the host website, along with additional data that the Facebook Pixel is configured to collect." *Id*. When a patient accesses Stanford's online patient portal, "Facebook causes the browser to secretly duplicate the communication with Stanford, transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity." *Id*. ¶ 29. The communications intercepted by Facebook in this manner contain protected health information. *See id.* ¶ 34. Gibson was not informed of, and did not agree to, the disclosure of her protected health information to Facebook. *See id.* ¶¶ 10-11.

On May 11, 2023, Stanford removed the action to federal district court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See* Not. of Removal, ECF 1. In its

Notice of Removal, Stanford alleges that § 1442(a)(1) applies because the suit challenges the legitimacy of actions Stanford took in order to participate in the Meaningful Use Program, a voluntary federal program under which eligible healthcare providers receive incentive payments if they facilitate patients' online access to health records. *See id.* at 1. The Notice of Removal describes in great detail former President George W. Bush's issuance of an Executive Order establishing the office of National Health Information Technology Coordinator ("National Coordinator"); the National Coordinator's decision to make online access to health care records a national priority; and the subsequent creation of the Meaningful Use Program. *See id.* ¶¶ 14-30. Stanford alleges that "[t]he Stanford patient portal and electronic Health Information Exchange ('HIE') are tools leveraged and promoted by Stanford for its patients' use as a direct result of the federal initiative to make health care records available to patients online." *Id*. ¶ 31. "Since leveraging the patient portal and electronic HIE, Stanford has continually met the Meaningful Use criteria, and has thus received incentive payments from the federal government." *Id*. Based on these allegations, Stanford contends that it was "acting under" a federal officer when it engaged in the conduct giving rise to this suit. *See id.* ¶¶ 36-47.

Following removal, Gibson filed the present motion to remand, arguing that Stanford's voluntary participation in the Meaningful Use Program does not create a basis for removal under § 1442(a)(2).

## II. LEGAL STANDARD

A defendant may remove a civil action from state court by filing a notice of removal "containing a short and plain statement of the grounds for removal" along with a copy of the process, pleadings, and orders served on the defendant in the state court action. 28 U.S.C. § 1446(a). The notice of removal must contain more than legal conclusions – "it must allege the underlying facts supporting each of the requirements for removal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).

A plaintiff who contests the existence of federal jurisdiction may file a motion to remand. *See* 28 U.S.C. § 1447(c). Such motion is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Leite v. Crane Co.*, 749 F.3d

3

1117, 1122 (9th Cir. 2014). "As under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations[.]" *Id*. The same rules governing a defendant's challenge to federal jurisdiction under Rule 12(b)(1) also govern a plaintiff's challenge to federal jurisdiction under § 1447(c). *See id.* A facial attack accepts the truth of the allegations in the defendant's notice of removal, while a factual attack contests the truth of those allegations. *See id.* at 1121-22. When the plaintiff raises a facial attack to the notice of removal, the court must accept the facts alleged in the notice of removal as true and draw all reasonable inferences in the removing defendant's favor when determining whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *See id.*; *see also Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1098 (9th Cir. 2018). When the plaintiff raises a factual attack to the notice of removal, the defendant must support the jurisdictional allegations in the notice of removal with "competent proof." *Liete*, 749 F.3d at 1121-22.

The removing defendant bears the burden of establishing the existence of federal subject matter jurisdiction. *Love v. Villacana*, 73 F.4th 751, 755 (9th Cir. 2023).

### III.  DISCUSSION

Stanford removed this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Gibson contends that § 1442(a)(1) does not apply and that the action should be remanded for lack of subject matter jurisdiction. The complaint does not disclose a basis for federal question jurisdiction or diversity jurisdiction, as it contains only state law claims between California parties.

The Court first sets forth the requirements for removal under § 1442(a)(1) and then discusses the application of the statute in this case.

#### A.  Requirements for Removal under § 1442(a)(1)

In relevant part, § 1442(a)(1) permits removal of a state court action against an "officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1) (emphasis added). "The statute protects federal officers from interference with their official duties through state-court litigation." *Fidelitad*, 904 F.3d at 1099. "The federal officer

4

removal statute responds to three general concerns: (1) 'State-court proceedings may reflect 'local prejudice' against unpopular federal laws or federal officials'; (2) 'States hostile to the Federal Government may impede' federal law; and (3) 'States may deprive federal officials of a federal forum in which to assert federal immunity defenses.'" *Id.* (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007)).

Although § 1442(a)(1) is "liberally construed," the Supreme Court has made clear that "its 'broad language is not limitless.'" *Fidelitad*, 904 F.3d at 1099 (quoting *Watson*, 551 U.S. at 147). "To invoke § 1442(a)(1) removal, a defendant in a state court action must demonstrate that (a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *Id.* (quotation marks and citation omitted).

### B. Stanford's Removal in this Case

In its Notice of Removal, Stanford asserts that it satisfies all three requirements for removal, alleging that: Stanford is a "person" within the meaning of § 1442(a)(1) (first requirement); Stanford was acting under a federal officer when creating and maintaining its patient portal and there was a causal nexus between its actions and Gibson's claims (second requirement); and Stanford raises a colorable federal defense to Gibson's claims (third requirement). *See* Not. of Removal ¶¶ 32-52. Gibson's motion does not address the first or third requirements, but raises a facial challenge to Stanford's allegations with respect to the second requirement. The Court therefore limits its discussion to the second requirement. Before undertaking that discussion, however, the Court addresses two procedural issues.

First, Gibson raises a new argument in her reply, asserting that Stanford has not adequately alleged the third requirement for removal, that it can assert a colorable federal defense. The Court declines to consider that argument. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Phan v. Transamerica Premier Life Ins. Co.*, No. 20-CV-03665-BLF, 2023 WL 3468313, at *2 (N.D. Cal. Apr. 17, 2023) ("It is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than presented in the moving papers.").

Second, Stanford requests judicial notice of four documents relating to federal policy and the Meaningful Use Plan, which are available on federal governmental websites. *See* Def.'s RJN, ECF 12. The request for judicial notice is granted. *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 642 (N.D. Cal. 2021) ("Documents published on government-run websites are proper for judicial notice given their reliability.")

Turning to the merits of the motion, the Court must determine whether the factual allegations in Stanford's Notice of Removal, accepted as true, are sufficient to satisfy the second requirement for removal under § 1442(a)(1), the existence of "a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims." *Fidelitad*, 904 F.3d at 1099 (quotation marks and citation omitted). "To demonstrate a causal nexus, the private person must show: (1) that the person was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's claims against it." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022) (citation omitted).

The Ninth Circuit has identified several factors that are relevant to determining whether a private person is "acting under" a federal officer for purposes of § 1442(a)(1). *See Cnty. of San Mateo*, 32 F.4th at 756-57. Those factors include whether the person: (1) "is acting on behalf of the officer in a manner akin to an agency relationship"; (2) "is subject to the officer's close direction, such as acting under the subjection, guidance, or control of the officer, or in a relationship which is an unusually close one involving detailed regulation, monitoring, or supervision"; (3) "is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm"; and (4) is engaged in "activity is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances[.]" *Id*. (quotation marks and citations omitted).

Stanford contends that it satisfies all of these factors. As to the first factor, Stanford asserts the existence of a sufficiently close relationship based on its receipt of incentive payments to participate in the Meaningful Use Program, which assists the federal government to achieve its goal of building a nationwide electronic health records system. Stanford argues that "[t]he

6

1    government paying providers like Stanford for their compliance with the Meaningful Use Program
2    reflects the 'payment' relationship that satisfies the 'acting under' requirement[.]" Def.'s Opp. at
3    6, ECF 11 (citation omitted).  As to the second factor, Stanford asserts that it was subject to the
4    close direction of the federal government when creating and maintaining its online patient portal,
5    as the Meaningful Use Program prescribed a specific framework and guidelines for providers to
6    follow, and Stanford submitted detailed reports on patient portal activities.  As to the third factor,
7    Stanford argues that absent the creation of online patient portals by private actors like Stanford,
8    the federal government would have to take on the task of building a nationwide electronic health
9    records system.  Finally, as to the fourth factor, Stanford argues that it "faces a significant
10   risk of state-court prejudice because this case falls squarely in the essential purpose of the federal
11   officer removal statute – protecting federal operations and programs from interference through
12   state-court litigation." *Id*. at 9.

13   These arguments have been rejected by numerous district courts in cases arising from
14   nearly identical facts.  In *Quinto v. Regents of Univ. of California*, No. 3:22-CV-04429-JD, 2023
15   WL 1448050 (N.D. Cal. Feb. 1, 2023), the Regents of the University of California ("UC") owned
16   and operated UCLA Health, offering a full range of medical services.  The plaintiff was a patient
17   of UCLA Health and used its website to book appointments and access its online patient portal.
18   *See id.* at *1.  The plaintiff alleged that when she did so, her personal identifying information and
19   private medical information were transmitted to Facebook by means of the Facebook Tracking
20   Pixel, which was a component of the UCLA Health website.  *See id.*  The plaintiff filed a putative
21   class action in state court, asserting claims under the California Invasion of Privacy Act, Cal.
22   Penal Code § 631(a), the California Confidentiality of Medical Information Act, Cal. Civ. Code §
23   56.10, and California's Constitution.  *See id.*

24   UC removed the state court action under § 1442(a) based on its assertion that it "use[d] the
25   Facebook Tracking Pixel as part of its broader effort to assist the federal government in achieving
26   its 'mission of a nationwide digitized healthcare system.'"  *Quinto*, 2023 WL 1448050 at *2.  The
27   *Quinto* court found that to be insufficient for removal, concluding that "receiving incentive
28   payments for acting in a way that promotes a broad federal interest – in an area outside the

7

1  traditional responsibility of the federal government – is not the same as being contracted to carry

2  out, or assist with, a basic governmental duty." *Id*. Rejecting UC's assertion that it was subject to

3  the close direction of a federal officer by virtue of the specific framework and guidelines provided

4  by the Meaningful Use Program, the *Quinto* court observed that "merely being subject to a

5  regulatory scheme is not the same as acting under a federal agency's close direction." *Id*. at *3.

6  The *Quinto* court therefore granted the plaintiff's motion to remand the action to state court for

7  lack of subject matter jurisdiction. *See id.* at *1, 3.

8      Every other district court in this circuit to consider the issue has reached the same result.

9  *See, e.g., Crouch v. Saint Agnes Med. Ctr.*, No. 1:22-cv-01527-ADA-EPG, 2023 WL 6940170, at

10  *2 (E.D. Cal. Oct. 20, 2023) ("[T]he mere furthering of a federal goal is not tantamount to

11  assisting or carrying out a federal task or duty."); *Valladolid v. Mem'l Health Servs.*, No. CV 23-

12  3007-MWF (ASX), 2023 WL 4236179, at *1 (C.D. Cal. June 27, 2023) ("[T]his Court joins the

13  majority of district courts and concludes that implementing the Meaningful Use Program is

14  insufficient to establish that Defendant was 'acting under' a federal agency[.]"); *Davis v. Hoag

15  Mem'l Hosp. Presbyterian*, No. SACV2300772CJCADSX, 2023 WL 4147192, at *1 (C.D. Cal.

16  June 23, 2023) ("[W]hile the Meaningful Use program may subject private entities like Hoag to

17  some degree of government control, simply complying with a law or regulation is not enough to

18  bring a private person within the scope of the statute.") (quotation marks and citation omitted).

19      This Court finds the reasoning of these decisions to be persuasive and follows them in

20  concluding that Stanford's voluntary participation in the Meaningful Use Program is insufficient

21  to establish that it was "acting under" a federal officer when creating and implementing its online

22  portal, and in particular when choosing to integrate the Facebook Tracking Pixel into the portal.

23  The Court declines to follow the two out-of-circuit district court decisions cited by Stanford, *Doe I

24  v. UPMC*, No. 2:20-CV-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020), and *Doe v. ProMedica

25  Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020). In this

26  Court's view, the courts in both *UPMC* and *ProMedica* applied an overly broad interpretation of

27  the "acting under" requirements. This Court cannot agree that Stanford was "acting under" a

28  federal officer when creating and maintaining its online patient portal, simply because Stanford

chose to adhere to the guidelines of a voluntary federal program in order to obtain incentive payments. "[M]ere compliance with federal directives does not satisfy the 'acting under' requirement of § 1442(a)(1), even if the actions are highly supervised and monitored." *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 989 (9th Cir. 2019) (quotation marks and citation omitted).

Accordingly, Gibson's motion to remand this action to state court is GRANTED.

**IV. ORDER**

(1) The motion to remand is GRANTED.

(2) The Clerk shall remand the case to the Santa Clara County Superior Court and close the file in this Court.

(3) This order terminates ECF 10.

Dated:  November 9, 2023

_____
BETH LABSON FREEMAN
United States District Judge